UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CHRISTIE BURRELL, individually, and on behalf of all others similarly situated,

    Plaintiff,

v.

TOPPERS INTERNATIONAL, INC., a Domestic Profit Corporation, DARNELL LEWIS GARDNER, individually, and SANDRA GARDNER, individually,

    Defendants.
_____/

CIVIL ACTION NO. __3:15-cv-125__

JURY TRIAL DEMANDED

**PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT**

**I.     SUMMARY**

Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees.  29 U.S.C. §§ 206, 207.  These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees.  *See, Billingsley v. Citi Trends, Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

    1.    This case implicates an adult entertainment club which goes by the trade name of "Toppers International Showbar."  The entities and employers implicated are, Toppers International, Inc. ("Toppers"), Darnell Lewis Gardner ("DLG"), and Sandra Gardner ("SG") (collectively "Defendants").

2. Defendants have a longstanding policy of misclassifying their employees as independent contractors.

3. Defendants required and/or permitted Plaintiff Christie Burrell ("Plaintiff") to work as exotic "entertainers" and/or dancers at their adult entertainment club in excess of forty (40) hours per week, but refused to compensate them at the applicable minimum wage and overtime rate. In fact, Defendants refused to compensate Plaintiff at all for the hours she worked. Plaintiff's only compensation was in the form of tips from club patrons.

4. Defendants' conduct violates the FLSA, which requires non-exempt employees, such as Plaintiff, to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

5. Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision as does Defendants' practice of siphoning away those tips to distribute to non-tip eligible employees. *See* 29 U.S.C. §§ 203, 206.

6. Plaintiff brings a collective action to recover the unpaid wages owed to her and all other similarly situated employees, current and former, of Defendants who worked at Toppers International, Inc., at any time during the three year period before this Complaint was filed up to the present ("Class Members"). These Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

## II. SUBJECT MATTER JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. Venue is proper in the Middle District of Georgia because a substantial portion of the events forming the basis of this suit occurred in this District, and Defendants' headquarters is located in this District.  In particular, Defendants headquarters are located at 1072 Mill Pointe, Watkinsville, Georgia 30677.  Also, Plaintiff worked at Defendants' club, located at 100 N Jackson Street Athens, GA 30601 at all times relevant hereto.

### III. PARTIES AND PERSONAL JURISDICTION

9. Plaintiff Christie Burrell is an individual residing in Clarke County, Georgia. Plaintiff's written consent to this action is attached hereto as Exhibit "A."

10. The Class Members are all of Defendants' current and former exotic entertainers who worked at Toppers International Showbar at any time during the three years prior to the filing of this Complaint up to the present.

11. Defendant Topper International, Inc., is a domestic corporation doing business in Georgia for the purpose of accumulating monetary profit. This Defendant may be served through its Registered Agent as follows: Darnell Lewis Gardner, 1072 Mill Pointe, Oconee, Watkinsville, Georgia 30677.

12. Defendant Darnell Lewis Gardner is an individual residing in Georgia.  Said This Court has personal jurisdiction over this Defendant because he is a resident of Georgia.

13. Defendant Sandra Gardner is an individual residing in Georgia.  This Court has personal jurisdiction over this Defendant because she is a resident of Georgia.

### IV. FLSA COVERAGE

14. In an FLSA case, the following elements must be met.  "(1) [plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [plaintiff] minimum or overtime wages."  *Freeman v. Key Largo*

*Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

## EMPLOYMENT RELATIONSHIP

15.     "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id.* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id.* (citing *Brouwer,* 139 F.3d at 819). "We refer to this test as the 'economic reality' test." *Id.* (citing *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997)). "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer." *Id.*

16.     Here, Defendants had the power to hire and fire Plaintiff. Defendants hold an audition for entertainers looking to be hired at the club.

17.     Defendants controlled Plaintiff's work schedule.

18.     Defendants scheduled Plaintiff and other entertainers to certain shifts, and required them to work a specific schedule each week.

19.     Defendants required Plaintiff and other entertainers to work a certain number of days during the week.

20.     Defendants provided training, if needed to Plaintiff and all similarly situated dancers.

21.     Defendants required Plaintiff and other dancers to wear specific clothing and enforced a dress code with regard to all dancers.

22.     Defendants determined the rate and the method of payment of all dancers including Plaintiff. Defendants set the price for their customers to pay dancers for private dances. Further, Defendants set a price for their customers to pay in order to enter their VIP and/or Executive lounges.

23. Additionally, Defendants required Plaintiff and all other entertainers to pay "house fees" depending on the day and shift the dancer was working, and the time they arrived at the club for each shift.

24. Defendants required Plaintiff and all other entertainers had to tip out certain employees at the end of their shift, including but not limited to the DJ, the House Mom, security, and managers.

25. Entertainers are an integral part of Defendants' strip club.

26. Plaintiff's and all other entertainers' job duties consisted of dancing in designated areas and performing dances for Defendants' customers at the club. These job duties require little to no skill.[1]

27. Defendants maintained some records regarding the time Plaintiff and all other entertainers arrived and left the club, and the dates on which they worked.

28. At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

---

[1] *See, Freund v. Hi-Tech Satellite, Inc.,* 185 Fed. Appx. 782, 783 (11th Cir. 2006) ([C]ourts must determine whether, as a matter of economic realit[y], an individual is an employee or an independent contractor in business for himself. Several factors guide this inquiry: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business.") (internal citations omitted); *see also*, *Clincy v. Galardi S. Enterprises, Inc.,* 808 F. Supp. 2d 1326, 1343 (N.D. Ga. 2011) (applying economic reality test and finding exotic dancers were employees not independent contractors).

29. Moreover, the Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee."  29 U.S.C. § 203(d).

30. The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where that individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged violation.  *See id*.; *Reich v. Circle C. Investments, Inc*., 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co*., 747 F.2d 966, 971-72 (5th Cir. 1984).

31. Defendant, DLG is an owner and operator/manager of Toppers.

32. Defendant, SG is an owner and manager/operator of Toppers.

33. Defendants DLG and SG are involved in the day-to-day business operation of Toppers.

34. Defendants DLG and SG have responsibility for the supervision of the entertainers at Toppers.

35. Defendants DLG and SG are responsible for the compensation or lack thereof paid to entertainers at Toppers.

36. Defendants DLG and SG have the authority, on behalf of Toppers to: hire and fire employees, direct and supervise the work of employees, sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation (or lack thereof), fines imposed on employees, and capital expenditures.

37. Additionally, at all times relevant hereto Defendants DLG and SG were and continue to be responsible for the day-to-day affairs of Toppers. In particular, they were/are responsible for determining whether the clubs complied with the Fair Labor Standards Act.

38. Defendants DLG and SG controlled the nature, pay structure, and employment relationship of the Plaintiff and Class Members.

39. As such, DLG and SG are the employers of the Plaintiff and Class Members within the meaning of 3(d) of the FLSA, and are jointly, severally, and liable for all damages.

## ENTERPRISE AND INDIVIDUAL COVERAGE

40. "The Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a) (1), requires an employer to pay overtime compensation to an hourly worker if the employee can establish individual coverage or enterprise coverage." *Silver v. Dr. Neal Krouse, D.O., P.A.*, 06-60634-CIV, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2007) (citing *Thorne v. All Restoration Svcs., Inc.,* 448 F.3d 1264, 1265 (11th Cir.2006)). "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or [ ] ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.'" *Id.* (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). "The phase 'engaged in commerce' is interpreted broadly and liberally." *Id.* (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

41. At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

42. At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

43. Specifically, Defendants' employees have sold goods—such as alcoholic beverages and a variety of foods—that have been moved or produced in interstate commerce to Defendants' patrons. Additionally, Defendants' employees, including Plaintiff, have handled

materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

44. Defendants regularly and customarily advertise on the internet, process credit cards from out of state patrons, and regularly communicate via mail, email, and telephone with their out-of-state vendors.

45. Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.00 per annum at all times relevant hereto.

46. At all material times, Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

## WAGE VIOLATIONS

47. Defendants misclassify Plaintiff and all other entertainers as independent contractors.

48. Defendants failed to pay Plaintiff and all other entertainers they hire any compensation whatsoever.

49. Any money Plaintiff received directly from Defendants' customers was tips.

50. Defendants siphoned Plaintiff's and all other entertainers' tips by requiring them to share their tips with other employees who are not eligible to participate in a tip pool.

## V. FACTS

51. Plaintiff and Class Members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA by denying them minimum wage, proper overtime, and the tips they lawfully earned.

52. Defendants operate an adult entertainment club in Athens, Georgia.

53. Defendants operate an adult entertainment club at 100 N Jackson St, Athens, Georgia 30601 under the name of "Toppers International Showbar."

54. Defendants employ exotic entertainers at Toppers International Showbar.

55. Plaintiff Christie Burrell is a former exotic entertainer at Defendants' adult entertainment club: Toppers International Showbar.

56. Plaintiff worked on a regular basis for Defendants' club.

57. From approximately November 1, 2012, until November 17, 2015, Plaintiff Christie Burrell danced at Defendants' club, Toppers International Showbar.

58. Therefore, Plaintiff Christie Burrell has first-hand personal knowledge of the pay violations at Toppers International Showbar.

59. The exotic entertainers are compensated exclusively through tips from Defendants' customers.

60. Defendants did not pay the entertainers compensation for any hours worked at their establishments.

61. Defendants charged the entertainers certain fees per shift worked.

62. Defendants charged the entertainers a "house fee" depending on the time they arrive to work.

63. Defendants also required the entertainers to share their tips with employees who do not customarily and regularly receive tips, including the disc jockeys and security employees.

64. Defendants illegally classified the entertainers as independent contractors. However, at all times, the entertainers were employees of Defendants as that term is defined by the FLSA and relevant case law.

65. Defendants hired, fired and supervised the entertainers.  Defendants also set the schedule for the entertainers. Defendants controlled the details of the entertainers' jobs, including setting the prices to charge customers for dances and imposing limitations on how to interact with the clubs' customers.

66. Defendants also controlled the entertainers' appearances with respect to their attire and makeup.

67. Defendants disciplined the entertainers for not following club rules.

68. Defendants tracked the time and days the entertainers worked just as is common for typical employer-employee relationships.

69. In addition, Defendants instructed the entertainers about when, where, and how the entertainers were to perform their work.

70. The following further facts demonstrate the entertainers' status as employees:

   a) Defendants had the sole right to hire and fire the entertainers;

   b) Defendants require dancers to complete an employee application as a prerequisite to their employment;

   c) Defendants made the decision not to pay wages or overtime their entertainers;

   d) Defendants made the decision not to compensate at the FLSA minimum wage rate;

   e) Defendants provided the entertainers with music equipment and a performing stage;

   f) Defendants controlled the entertainers' music;

   g) The dancers have made no financial investment with Defendants' business;

   h) The dancers were hired as permanent employees and have worked for Defendants for years;

   i) Defendants supervised the entertainers; and

   j) Defendants scheduled entertainers and as such had sole control over their

opportunity for profit.

71. Defendants misclassified Plaintiff and Class Members as independent contractors to avoid their obligations to pay them pursuant to the FLSA.

72. Plaintiff and Class Members are not exempt from the overtime and minimum wage requirements under the FLSA.

73. Although Plaintiff and Class Members are required to and do in fact work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of the FLSA. *See* 29 U.S.C. § 206.

74. Defendants' method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiff with the intent to avoid paying her in accordance to the FLSA.

75. Defendants have been in the exotic dancing industry for years and are familiar with the long line of federal cases holding that entertainers in this industry are employees as that term is defined by the FLSA.

76. Further, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

77. All Defendants have a common business purpose of for profit adult entertainment.

78. The individually named Defendants keep employment records for Toppers International Showbar.

79. The individually named Defendants have ultimate authority regarding hiring and firing employees at Toppers International Showbar.

80. The individually named Defendants own and operate Toppers International Showbar.

81. The individually named Defendants created and implemented companywide policy of misclassifying exotic entertainers as independent contractors at Toppers International Showbar.

## VI.     COUNT ONE: VIOLATION OF 29 U.S.C. § 207

82. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

83. Defendants' practice of failing to pay Plaintiff and Class Members time-and-a-half rate for hours they work in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

84. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendants or Plaintiff.

## VII.     COUNT TWO: VIOLATION OF 29 U.S.C. § 206

85. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

86. Defendants' practice of failing to pay Plaintiff and Class Members at the required minimum wage rate each workweek violates the FLSA.  29 U.S.C. § 206.

87. In fact, Defendants do not compensate the exotic entertainers whatsoever for any hours worked.

88. None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiff.

89. Defendants failed to keep adequate records of Plaintiff's and Class Members' work hours and pay in violation of section 211(c) of the FLSA.  *See* 29 U.S.C. § 211(c).

90. Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

   a) The time of day and day of week on which the employees' work week begins;

   b) The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

   c) An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

   d) The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

   e) The hours worked each workday and total hours worked each workweek;

   f) The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

   g) The total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

   h) The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

   i) The dates, amounts, and nature of the items which make up the total additions and deductions;

   j) The total wages paid each pay period; and

k)   The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

91.   Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff and Class Members.

92.   Because Defendants' records are inaccurate and/or inadequate, Plaintiff and Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*¸ 328 U.S. 680, 687 (1946).

## VIII.   COLLECTIVE ACTION ALLEGATIONS

93.   As part of their regular business practices, Defendants have intentionally, willfully and repeatedly harmed Plaintiff and Class Members by engaging in a pattern, practice, or policy of violating the FLSA on a class wide basis, as described above.

94.   Although Defendants permitted and/or required Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty.

95.   Defendants have also denied them full compensation at the federally mandated minimum wage rate for one or more workweeks in which Plaintiff and Class Members worked for Defendants.

96.   Class Members perform or have performed the same or similar work as Plaintiff.

97.   In particular, Plaintiff and Class Members all worked as exotic entertainers under the same conditions and subject to the same violations of the FLSA.

98.   Many Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

99. Defendants have classified and continue to classify Class Members as independent contractors.

100. Class Members are not exempt from receiving overtime pay and/or minimum wage at the federally mandated minimum wage rate under the FLSA.

101. As such, Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

102. Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Class Members.

103. The experiences of Plaintiff, with respect to their pay, are typical of the experiences of Class Members.

104. The experiences of Plaintiff, with respect to their job duties, are typical of the experiences of Class Members.

105. The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

106. All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

107. All Class Members, irrespective of their particular job requirements, are entitled to compensation at an amount equal to or greater than the federally mandated minimum wage rate for each workweek worked.

108. Although the exact amount of damages may vary among Class Members, the damages for Class Members can be easily calculated by a formula.

109. The claims of all Class Members arise from a common nucleus of facts.

110. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Class Members.

111. The Plaintiff and the Class Members held the same job title: Dancers and/or Entertainers.

112. The Defendants have classified all of its entertainers as independent contractors from at least December 24, 2012, to present.

113. The individually named Defendants instituted, permitted, and/or required the policy and practice of classifying all exotic entertainers at Toppers International Showbar as independent contractors.

114. The individually named Defendants instituted, permitted, and/or required the policy and practice of charging all exotic entertainers at Toppers International Showbar a house fee.

115. The individually named Defendants instituted, created, and/or permitted the policy and practice of requiring all dancers and/or exotic entertainers at Toppers International Showbar to tip out staff including the DJ and security employees.

116. As such, the class of similarly situated Plaintiff is properly defined as follows:

**All of Defendants' current and former exotic entertainers who worked at Topper International Showbar at any time during the three years before this Complaint was filed up to the present.**

## IX.    DAMAGES SOUGHT

117. Plaintiff and Class Members are entitled to recover compensation for the hours they worked, for all workweeks in which they were not paid at the federally mandated minimum wage rate.

118. Additionally, Plaintiff and Class Members are entitled to recover their unpaid overtime compensation.

119. Plaintiff and Class Members are also entitled to all of the misappropriated funds, including all funds that were charged as fees and penalties, and all tips that were taken.

120. Without repayment of such fees, Plaintiff and Class Members will not have been paid minimum wage and overtime in accordance with the FLSA.

121. Plaintiff and Class members are also entitled to an amount equal to all of their unpaid wages and fees as liquidated damages. 29 U.S.C. § 216(b).

122. Plaintiff and FLSA Class Members are entitled to recover their attorney's fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

## X.    JURY DEMAND

123. Plaintiff and Class Members hereby demand trial by jury.

## PRAYER

124. For these reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

   a. Overtime compensation for all hours worked over forty in a workweek at the applicable time-and-a-half rate;

   b. All unpaid wages at the FLSA mandated minimum wage rate;

   c. All misappropriated tips;

   d. All misappropriated funds that were labeled as fees, fines or otherwise;

   e. An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under the FLSA;

   f. Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

   g. Such other relief to which Plaintiff and Class Members may be entitled, at law or in equity.

Respectfully submitted,

**/s/ ANDREW R. FRISCH**
Andrew R. Frisch, Esquire
GA Bar No. 366105
Morgan & Morgan, P.A.
600 N. Pine Island Road, Suite 400
Plantation, FL 33324
Tel: (954) WORKERS
Fax: (954) 327-3013
E-mail: afrisch@forthepeople.com

*ATTORNEY FOR PLAINTIFF & CLASS MEMBERS*