# EXHIBIT L

Username

**ED PUBLICATIONS**

*Proudly serving the adult nightclub industry for over 20 years*

HOME    THE CONVENTION    SUBSCRIBE    THE MAGAZINE    TEAMSTATE    ADVERTISE    CONTACT US

Search…



## WHO HOLDS THE CARDS





Carpet
you want!

MODERN LINE
FURNITURE

Products in Stock.
Ready to Ship.



## ◁▷ legally speaking *inviting litigation?*
*by Brad Shafer*

# Who holds the cards if your club gets hit by a dancer class-action lawsuit?

If your club classifies its dancers as "independent contractors" and you don't have an up-to-date contract or agreement, you are likely flirting with disaster. So says attorney Brad Shafer, who provides insight into the current dancer class-action lawsuits, as well as the important items club owners and their attorneys should consider when preparing a dancer contract..

**U**nless you have been living under a rock the past few years, you know that clubs and club owners are facing legal exposure in regard to their business practices like never before. Concerns about club "script," cab payments and liabilities stemming from the use of certain POS systems, for example, are on everyone's mind, as is the ever-present dancer classification issue.

Over the past few years, the number of dancer class-action lawsuits—where one or two entertainers contend, purportedly on behalf of all of the dancers who have performed at your club, that they are really employees and are not "independent contractors," and are therefore entitled to minimum wage, overtime, etc.—has exploded across the country. There are law firms that have decided to "specialize" in these particular cases directly solely at gentlemen's clubs; there are lawyers who have actually moved to a different state where they feel that the litigation ground for these types of lawsuits is more fertile.

Now, a core group of lawyers are basically looking at you, your club and this industry, as their guaranteed retirement plan. We have seen not only the same attorney filing lawsuits against competitor clubs, but actually "professional plaintiff" dancers who file case after case, after case; one entertainer we know has filed no fewer than 10 different class action lawsuits against different clubs and chains.

This explosion of litigation has not occurred because of the merits of the legal claim that entertainers are properly classified as employees as opposed to "independent contractors." In fact, in a couple of cases in which I have been involved, when the dancers sued over their alleged misclassification as independent contractors, and the clubs then tried to convert the entertainers to employees, the dancers have actually gone to court to try to stop the clubs from changing them to employees!

These are shakedowns, plain and simple. Because when the entertainers are pushed to make a real choice, the answer is easy: The benefits of remaining as independent contractors far outweigh those of being employees, and exotic ➔

**These lawsuits are happening**, therefore, not because of some perceived "protection" of the rights of entertainers, but because many of you—by your failure to take just the most **simple and basic steps** to protect yourself and your club—are making it **easy** for the dancers and the attorneys to extort **huge financial settlements** from clubs and owners.

                              www.EDpublications.com

continued from page 18

dancers are smart enough to know that when push comes to shove, they don't want to be treated as employees.

These lawsuits are happening, therefore, not because of some perceived "protection" of the rights of entertainers, but because many of you—by your failure to take just the most simple and basic steps to protect yourself and your club—are making it so easy for the dancers and the attorneys to extort huge financial settlements from clubs and owners. Many of you leave yourselves in a position where you simply cannot take the risk of litigating these types of claims through a full-blown trial, and if you are not properly prepared, plaintiff's attorneys can make it so expensive for you to defend yourself in these lawsuits that even if you win, you lose financially. The dancers and attorneys bringing this new wave of lawsuits perceive your industry to be a "target rich environment," and competing lawyers are virtually tripping over each other to be the first one to sue you so that they can then lock up their entitlement to potential attorney fees at the conclusion of the lawsuit.

There are many steps that you, as a club owner, can take to protect yourself and your club from these potentially catastrophic lawsuits. And yet, I see that, time-after-time, club owners will sit on their hands, bury their heads in the sand, and just hope that a dancer class action lawsuit will

tax claims; state tax claims; workers' compensation claims; unemployment compensation claims; and Title VII (discrimination) claims. In these matters, my clients and I have prevailed by either having entertainers actually found to be true independent contractors (as opposed to employees) or by allowing the clubs to be able to continue to classify dancers as independent contractors without reaching the ultimate question of their proper status.

But, just because I have been successful on these issues with those particular clients and their specific business practices, it does not mean that you will prevail if any of these types of claims are made against you and your club in the future. These are very fact-specific determinations, which must be made, as the courts recognize, on a case-by-case basis. Most of my clients who have prevailed on this issue are very proactive when it comes to the business classification of exotic dancers, and they implement the most up-to-date contracts, documents and club procedures in order to provide them with the absolute maximum level of protection for clubs and club owners on these hotly contested matters.

If you do not classify your entertainers as employees, it has never been more critical for you to take affirmative steps to address this fundamentally important issue. So ask yourself this question as

**If you ignore this issue** and continue to operate without an entertainer contract, or if you are utilizing an agreement that has not been updated over the past two years to take full advantage of all of the new judicial decisions, you are **robbing yourself** of a host of legal protections that can otherwise be used, and you are literally **inviting litigation**



step. Blindly trusting that this whole issue will all simply "go away" is not a very enlightened risk-management plan. And, by taking some very basic protective steps, you can significantly reduce your risks in regard to these types of claims.

## First, a little background on dancer classification

For those of you who may be new to the industry or unfamiliar with this issue, there are basically five ways that clubs can classify exotic dancers for business purposes; one is to treat entertainers as employees, and the other four treat them as some form of non-employees. Please note: The term "non-employee" may not legally fit in all circumstances; the non-employee status of exotic dancers is generally referred to both in the industry and in the courts as "independent contractors."

This business classification impacts upon a wide variety of legal issues that can expose both you and your club to substantial monetary risks. Since 1988, when I first began defending the classification of exotic dancers, I have successfully litigated this issue in, for example, federal minimum wage law claims; state minimum wage law claims; federal

have in place to protect myself and my club if dancer classification claims are ever made against us?

While lawyers and entertainers are virtually going from club-to-club filing these wage lawsuits, over the last couple of years, the courts have given you the ability to build into your contracts, documents and club procedures, broad protections that can significantly reduce your exposure to these types of claims. While you may have felt in the past that you could get by without a dancer contract or agreement, given the current legal terrain and environment, that is now a recipe for disaster. If you ignore this issue and continue to operate without an entertainer contract, or if you are utilizing an agreement that has not been updated over the past two years to take full advantage of all of the new judicial decisions, you are robbing yourself of a host of legal protections that can otherwise be used, and you are literally inviting litigation against you and your club.

Not only can a good contract provide you with a variety of legal defenses if a dancer class-action lawsuit is ever filed against you or your club, but it also provide to you a number of critical counterclaims against the entertainers, so that if dancers sue you for minimum wages you can actually ➡

---

*continued from page 20*

sue them back! Without the appropriate documents in place that incorporate the proper legal language, your ability to bring these types of counterclaims may be barred, or at least significantly limited.

Recently, in settlement discussions concerning a class-action case, a dancer's attorney confidentially told me that his biggest concern of taking the case to trial was the language contained in one of my contracts (which a federal court acknowledged—in response to a motion to dismiss my counterclaims filed by the dancers—was probably enforceable), and his belief that even if they were successful in convincing a jury that the dancers were truly employees, they would either get absolutely nothing out of the lawsuit or the entertainers would actually owe the clubs money back.

Isn't that a position in which you would want to be if a dancer ever sued you? But without the proper type of documentation and club procedures in place, you may be left to the vultures to pick your bones clean.

## Specific areas to address in regard to dancer status classification



The decisions that you make, and the contents of your agreements, will be decided by your specific answers to a wide variety of questions in consultation with your labor attorneys and accountants. Some of the more basic questions that you and your professionals need to address include:

• What are the pros and cons of including an arbitration clause in your dancer contracts? And are your state laws conducive to arbitration agreements?

• How do your state tax laws impact upon the question of how you classify exotic dance entertainers who perform at your club?

• How do your state workers' compensation laws impact upon the question of how you classify exotic dance entertainers who perform at your club?

• How do your state unemployment compensation laws impact upon the question of how you classify exotic dance entertainers who perform at your club?

• How do your state liquor laws impact upon the question of how you classify exotic dance entertainers who perform at your club?

• What federal circuit are you in (this can impact upon not only the test to distinguish employees from independent contractors, but upon a variety of legal issues concerning the differentiation of dancer income as well)?

• Has your business or its predecessors ever treated entertainers as employees?

• What is your legal jeopardy if you classify entertainers as employees, and they do not adequately report their tip income to you?

• What are your risks for sexual harassment and/or discrimination claims?

Because these matters are of such an important concern to club owners at the present time, and because there have been so many critical changes in the law affecting these matters over just the past few years, industry accountant David Shindel and I, together with accountant Maria Montie and Eric Nemeth, an attorney who worked in the Chief Counsel's office of the IRS for six years, have decided to present a day-long private seminar on August 25, 2011, the day after EXPO concludes, dealing with these issues and a number of other critical labor, tax and club operational matters that have recently come to the forefront of concern for the gentlemen's club industry. This seminar will be a full day (9:00 a.m. until 4:30 p.m.), and an advertisement found elsewhere in this edition of *Club Bulletin* (p. 49) tells you how to sign up for this class and provides a little more information as to the topics that we will be discussing.

Perhaps most importantly, we will provide attendees with a CD-rom full of detailed information, documents and forms that you can use in order to best protect you and your club from claims not only brought by entertainers, but by employees as well, and we will provide to you detailed information as to how you can structure your business practices to maximize the chance that, in the event that you are ever sued on the dancer classification issue, you hopefully won't owe anything to the entertainers and you can get the case quickly dismissed.

While Dave Shindel, Maria Montie and I have run similar seminars before, the last was in 2008, and a great deal has changed legally since then. We recommend to those of you who have participated in one of our seminars in the past that you attend this one as well to get the most up-to-date information on these critical legal, tax and operational topics. As always, your accountants and bookkeepers (as well as labor attorneys) are also welcome to attend.

We hope to see you then. 👁‍🗨

*Bradley J. Shafer is the principal of the law firm of Shafer & Associates, P.C., located at 3800 Capital City Blvd., Suite 2, Lansing, Michigan 48906-2110. He is a former National Chairman of the First Amendment Lawyers Association, and has been involved in First Amendment matters and litigation involving Gentlemen's Clubs for almost 30 years. He can be reached at (517) 886-6560, or via e-mail at brad@bradshaferlaw.com.*



*All readers should note that this article briefly summarizes very complex legal issues and judicial decisions. The intent of this article is for informational purposes only, and is not intended to provide either an exhaustive analysis of these matters or any specific legal advice or recommendation. Laws vary by state and municipality. The positions and opinions expressed by Mr. Shafer are his alone, and do not necessarily reflect those of any of his clients.*

---

## ADD COMMENT NOT USING A FACEBOOK PROFILE

GUESTS MAY COMMENT WITHOUT AN ACCOUNT.

Registered users are able to upload an avatar and comment faster by not inputing their name, email & spam code each time.

**You may register for an ACCOUNT HERE. Accounts are fast and free.**

Name (required)

E-mail (required, but will not display)

500 symbols left

Refresh

**Send**

JComments

## EXISTING USERS LOGIN HERE TO COMMENT

Username | •••••• | Login | Forgot login? | Register

## MOST POPULAR ARTICLES

- Your Staff (1)

## HELP MENU

- ★ HOME
- ★ Contact the ED Staff
- ★ Advertise
- › Media Kit - MAGAZINE
- › Media Kit - WEBSITE
- › Brochure Booster!
- › Marketplace
- SC4S - Club for sale
- Business Listing Update
- Media Relations
- SC4S - Featured Club

## ARTICLE CATEGORIES

- ★ EXPO Coverage
- ★ The DJ Booth
- ★ Faces and Places
- ★ Cool Products
- ★ Special Focus On
- ★ Legally Speaking
- ★ Tips & Advice
- ★ On the Cover
- ★ Club Owner Profile
- ★ Industry News

## EXPO 2017

- ★ Register HERE
- ★ About EXPO 2017
- ★ Attendee Info 2017
- ★ Exhibitor Info 2017
- ★ Special Discounts 2017
- ★ Sponsor Info 2017
- ★ The Awards Show 2017
- ★ Parties & Events 2017
- ★ Girls of EXPO 2017
- ★ Confirmed Exhibitors 2017
- ★

- ★ CLUB e-GUIDE ADS