IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CHRISTIE BURRELL, *individually*  \*
*and on behalf of all others*
*similarly situated*,                \*

    Plaintiff,                   \*

vs.                                  \*
                                      CASE NO. 3:15-CV-125 (CDL)

TOPPERS INTERNATIONAL, INC.,         \*
DARNELL LEWIS GARDNER, and
SANDRA GARDNER,                      \*

    Defendants.                 \*

O R D E R

During the pretrial conference in this matter, the Court denied Plaintiffs' partial summary judgment motion in an oral ruling from the bench. Min. Order, Apr. 4, 2017, ECF No. 78. Plaintiffs filed a motion for reconsideration. The motion (ECF No. 80) is granted to the extent set forth in this Order.

**I. Plaintiffs Are Employees, Not Independent Contractors**

Defendant Toppers International, Inc. is an adult night club. Plaintiffs are entertainers at the club, and they contend that Toppers improperly classified them as independent contractors and did not pay them minimum wage as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. It is undisputed that Toppers does not pay any wages to entertainers, and it does not include entertainers in payroll. Pretrial Order

Ex. A, Material Undisputed Facts ¶ 7, ECF No. 79-1. Instead, entertainers rely solely on tips from customers to earn money for their work at Toppers. *Id.* ¶ 8. Plaintiffs argue that the undisputed facts demonstrate that they are employees within the meaning of the FLSA, not independent contractors. The Court agrees.

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). "This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'" *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947)).

The courts consider six main factors in determining the economic reality of the parties, and the Court will address each factor in turn.

### A. Nature and Degree of Control

The first factor is "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed." *Id.* at 1312. It is undisputed that Toppers

exercised significant control over the manner in which the entertainers' work was performed. Toppers set the entertainers' schedules and would not permit entertainers to work busy shifts unless they also worked slower shifts. Material Undisputed Facts ¶¶ 38-41. Entertainers were fined if they arrived late, left early, missed a shift, or missed a stage call. *Id.* ¶¶ 42-43, 55. Entertainers had to pay a mandatory "house fee" at the beginning of each shift, a mandatory "tip out" at the end of each shift, and various fees to other individuals who worked at Toppers. *Id.* ¶¶ 35, 37, 61-63. Toppers set minimum prices for table dances and lap dances, had rules on how entertainers danced on the main stage, and required entertainers to share tips with other entertainers who shared the main stage with them. *Id.* ¶¶ 5, 56-57, 59. Toppers had rules on entertainers' apparel, hair, and nails. *Id.* ¶¶ 51-52. Toppers also had written policies and procedures, and entertainers could be disciplined—including terminated—for violating those policies and procedures. *Id.* ¶¶ 66, 68-69. Based on all of these undisputed facts, Toppers exercised significant control over the work of its entertainers. This factor weighs in favor of finding that the entertainers are employees.

B. Opportunity for Profit or Loss

The second factor is "the alleged employee's opportunity for profit or loss depending upon [her] managerial skill."

3

*Scantland*, 721 F.3d at 1312. Although the entertainers could negotiate the rate customers paid them for dances (above the minimum rate set by Toppers), they had limited opportunities to increase their profit. And, other than the mandatory fees they had to pay to dance at Toppers, the entertainers had no risk of loss. In contrast, Toppers had extensive control over the entertainers' opportunity for profit because Toppers controlled the location, facilities, marketing, and inventory of beverages for the club. And Toppers had a much bigger risk of loss than the entertainers because Toppers was responsible for all rents, utilities, maintenance, insurance, and advertising for the club. Thus, this factor weighs in favor of finding that the entertainers are economically dependent on Toppers and are therefore its employees.

### C. Investment in Equipment

The third factor is "the alleged employee's investment in equipment or materials required for his task, or his employment of workers." *Scantland*, 721 F.3d at 1312. At Toppers, entertainers are responsible only for their own makeup, hair, and apparel. Material Undisputed Facts ¶ 77. Toppers was responsible for all other investments necessary for the entertainers to do their work, including the facility, stage, marketing, bar, and security. This factor weighs in favor of

4

finding that the entertainers are economically dependent on Toppers and are therefore its employees.

   D.   Special Skill

The fourth factor is "whether the service rendered requires a special skill." *Scantland*, 721 F.3d at 1312. It is undisputed that no prior experience or formal training is required to work as an entertainer at Toppers. Material Undisputed Facts ¶¶ 78-79. Rather, it appears that the only criteria on which entertainers are selected are physical attractiveness and a willingness to disrobe. This factor weighs in favor of finding that the entertainers are employees.

   E.   Permanency and Duration of the Relationship

The fifth factor is "the degree of permanency and duration of the working relationship." *Scantland*, 721 F.3d at 1312. In general, a longer working relationship militates toward a finding that the worker is an employee. Here, there is evidence that many entertainers worked at Toppers for at least a year. Material Undisputed Facts ¶ 83. The present record does not indicate whether the entertainers' working relationship with Toppers was exclusive, and it does not establish that the entertainers had a contract with Topers for a specific term. The Court finds that this factor is neutral.

5

### F. Integral Part of Business

The sixth factor is "the extent to which the service rendered is an integral part of the alleged employer's business." *Scantland*, 721 F.3d at 1312. Toppers agrees that entertainers are integral to the operation of Toppers; without the entertainers, Toppers cannot operate its business as a strip club. Material Undisputed Facts ¶¶ 86, 88. This factor weighs in favor of finding that entertainers are employees.

### G. Summary

As discussed above, the undisputed facts and the *Scantland* factors weigh in favor of finding that the entertainers were economically dependent on Toppers. They were not "in business for" themselves; rather, they were "dependent upon finding employment in the business of others." *Scantland*, 721 F.3d at 1312 (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301–02 (5th Cir.1975)). For these reasons, the Court concludes that, as a matter of law, Plaintiffs were employees within the meaning of the FLSA.

## II. Defendants are Not Entitled to an "Offset" Defense

Plaintiffs argue that to the extent that Defendants are asserting an "offset" defense, they are not entitled to it. Defendants did not respond to this argument or present any evidence to create a genuine fact dispute on this issue.

6

Under the offset defense, an employer may offset its minimum wage obligations with "service charges" that become part of the employer's gross receipts and are distributed by the employer to its employees. 29 C.F.R. § 531.55(b). On the other hand, tips do not count toward the offset defense.[1] Here, it is undisputed that the entertainers at Toppers rely solely on tips from customers to earn money for their work. Material Undisputed Facts ¶ 8. The tips go directly to the entertainers, and Toppers does not include these amounts in its gross receipts; no one at Toppers tracks how much entertainers receive in tips. *Id.* ¶¶ 93, 96. For these reasons, the tips received by Toppers entertainers do not qualify as "service charges" that can be counted to satisfy Defendants' obligation to pay Plaintiffs the federal minimum wage. Plaintiffs' summary judgment motion on this issue is therefore granted.

**III. Remaining Issues**

Plaintiffs also sought summary judgment on two additional issues: (1) whether Darnell Lewis Gardner and Sandra Gardner are "employers" within the meaning of the FLSA and (2) whether Defendants acted willfully. Because the Court finds that

---

[1] In general, tips cannot be counted toward an employer's minimum wage requirements unless the employer meets the requirements for a tip credit under 29 U.S.C. § 203(m). Those requirements are: (1) the employer must pay a "tipped employee" a cash wage and (2) if the cash wage plus tips are not enough to meet the minimum wage, the employer must pay an additional amount to meet the minimum wage. *Id.* Neither requirement is met here.

7

genuine fact disputes exist on both of these questions, the Court declines to reconsider its prior ruling on these issues.[2]

## CONCLUSION

As discussed above, Plaintiffs' motion for reconsideration (ECF No. 80) is granted to the extent set forth in this Order. Based on the undisputed evidence, Plaintiffs are entitled to summary judgment on their claim that entertainers at Toppers are employees, not independent contractors. Plaintiffs are also entitled to summary judgment on Defendants' offset defense. But genuine fact disputes preclude summary judgment on the remaining issues.

IT IS SO ORDERED, this 18th day of April, 2017.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[2] The Court further notes that Darnell Gardner has filed a Chapter 13 bankruptcy petition. Thus, the case is automatically stayed as to him, and the Court cannot rule on these issues as to Darnell Gardner at this time.